UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | : | Criminal No. 3:18-cr-038 (VAB) |
|---|---|---|
| v. | : | |
| GEORGE GAROFANO | : | August 22, 2018 |

## UNITED STATES'S SENTENCING MEMORANDUM

The Government respectfully submits this memorandum in response to the sentencing memorandum of the defendant, George Garofano.

During a prolonged period of more than 18 months, Mr. Garofano illegally hacked into the private Apple iCloud accounts of over 200 victims, including celebrities and non-celebrities, so he could steal their personal information, especially nude photographs. He then traded (and possibly sold) the private photographs and information with other individuals. In light of this unlawful and egregious invasion of privacy, as well as the other 3553(a) factors, the Government respectfully requests that the Court impose a Guidelines term of imprisonment of 10 to 16 months, followed by a term of supervised release.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Defendant's Offense Conduct

The Government agrees with the offense conduct set forth in the Pre-Sentence Report ("PSR"). PSR ¶¶ 14-21. In short, this matter stems from an FBI investigation, known as "Celebgate," of several defendants for leaking private photographs of numerous female celebrities. PSR ¶ 15. The investigation revealed that between April 2013 and October 2014, Mr. Garofano hacked into approximately 240 Apple iCloud accounts, many of which belonged to celebrities and members of the entertainment industry, so he could steal their personal information, including

nude photographs. PSR ¶¶ 16, 19-21; *see* PSR ¶ 24 (quoting Mr. Garofano's written statement in which he admitted that "nude photos of some celebrities" is "what first peaked [his] interest.").

Mr. Garofano carried out his hacking activity by engaging in a sophisticated phishing scheme in which he tricked his victims into providing their usernames and passwords for their Apple iCloud accounts. PSR ¶ 18. In some instances, he sent fake e-mails to victims that appeared to be from security accounts of Apple, telling the victims their accounts had been compromised, and asking the victims to send him their usernames and passwords. *Id.* In other instances, he sent the victims a fake link, designed to like it was for an Apple or iCloud website, which directed the victims to an illegal third-party website that prompted the victims for their usernames and passwords, which the website captured and Mr. Garofano later retrieved. *Id.*

Mr. Garofano then used this fraudulently obtained login information to access the victims' iCloud accounts and steal their personal information, including text messages and nude photographs and videos. PSR ¶¶ 19, 24. Mr. Garofano also traded the victims' usernames and passwords, as well as the photographs and videos he stole from them, with other individuals. PSR ¶¶ 19, 24. In some cases, Mr. Garofano may have even sold this information to others for financial gain. *See* PSR ¶¶ 24 (quoting Mr. Garofano's written statement in which he admitted that "online you could trade or *sell* this information to others" and that "the extra income was unfortunately not helping me discontinue what I was doing.") (emphasis added); 78 (observing that Mr. Garofano engaged in the offense for "thrills and possibly financial gain.").

Mr. Garofano did not only target celebrities. He also targeted and hacked into the iCloud accounts of many non-celebrities, including his fellow classmates at the university he attended. PSR ¶ 16. In total, the Government identified approximately 240 victims of Mr. Garofano's illegal conduct. PSR ¶¶ 16, 21.

### B. Procedural History and Sentencing Guidelines

Mr. Garofano was charged with the instant offense in a one-count information filed in the Central District of California on January 11, 2018. *See* ECF No. 1 at 3. The information charged Mr. Garofano with unauthorized access to a protected computer to obtain information, in violation of 18 U.S.C. § 1030(a)(2)(C), (c)(2)(B)(ii) and (iii). *Id.* The case subsequently was transferred to the District of Connecticut, on consent of the parties, pursuant to Rule 20 of the Federal Rules of Criminal Procedure. *Id.* at 1. On April 11, 2018, Mr. Garofano waived indictment and pled guilty to the information. PSR ¶ 1. He faces a maximum sentence of 5 years of imprisonment, three years of supervised release, a fine of up to $250,000, and a $100 mandatory special assessment. PSR ¶¶ 58-65.

The PSR calculated Mr. Garofano's offense level under the Federal Sentencing Guidelines as follows. The PSR determined the base offense level under U.S.S.G. § 2B1.1(a)(2) to be six. PSR ¶ 27. Two levels were added pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i) because the offense involved more than 10 victims. PSR ¶ 28. Pursuant to U.S.S.G. § 2B1.1(b)(10)(C), the offense level was increased to twelve because the offense involved sophisticated means and Mr. Garofano intentionally engaged in or caused the conduct constituting sophisticated means. PSR ¶¶ 29-30. Two more levels were added pursuant to U.S.S.G. § 2B1.1(b)(17)(A) because the defendant was convicted of hacking Apple iCloud accounts under 18 U.S.C. § 1030 and obtained personal information, including photos and videos from his victims. PSR ¶ 31. Following a reduction of two levels for acceptance of responsibility, the PSR determined that Mr. Garofano's total offense level is twelve. PSR ¶¶ 37-38.

The PSR determined that Mr. Garofano has accumulated zero criminal history points, which places him in Criminal History Category I. PSR ¶ 40. As a result, the PSR concluded that

Mr. Garofano faces a Guidelines range of 10 to 16 months of imprisonment, a term of supervised release of one to three years, and a fine of $3,000 to $30,000. PSR ¶¶ 59-66.

The Government agrees with the Guidelines calculation in the PSR. The Government also has no objections to the PSR.

## IV.  DISCUSSION OF SENTENCING AND 3553(a) FACTORS

### A.  A Guidelines Sentence of Imprisonment is Warranted.

The Government respectfully requests that the Court impose a Guidelines sentence of 10 to 16 months of imprisonment, followed by a period of supervised release that includes a special condition of community service. Such a sentence is reasonable and not greater than necessary to satisfy the purposes of sentencing. It would reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and avoid unwanted sentencing disparities, while also affording adequate deterrence to future criminal conduct and taking into account Mr. Garofano's history and characteristics.

In this case, Mr. Garofano's offense was a serious one. He illegally hacked into his victims' online accounts, invaded their privacy, and stole their personal information, including private and intimate photos. He did not engage in this conduct on just one occasion. He engaged in this conduct 240 times over the course of 18 months. Not only did Mr. Garofano keep for himself the photographs he stole, he disseminated them to other individuals. He may have also sold them to others to earn "extra income." PSR ¶ 24.

Although Mr. Garofano engaged in the offense by hiding behind a computer, his actions essentially amounted to breaking into 240 homes, searching through his victims' closets and drawers, and stealing their personal belongings. The fact that the items he stole were private photographs and videos, as opposed to other tangible items, makes no difference. In many cases, these were nude and intimate photos that no one else was meant to see.

What makes matters worse is that Mr. Garofano traded the photographs with others. Once he disseminated them, there was no stopping their spread and further circulation. Mr. Garofano can apologize and express remorse for his actions, but he cannot put the proverbial genie back in the bottle. The information and nude photographs he disseminated are now forever in circulation, and each time someone else views any one of those photographs—private photographs that no one was meant to see—the victim is re-victimized all over again.

In committing this offense, Mr. Garofano acted in complete and utter disregard for the impact on his victims' lives. Just knowing that their accounts have been hacked and photographs circulated has caused the victims emotional suffering. Indeed, one victim submitted a victim impact statement describing how a private photograph of herself taken when the victim was 17 was taken from her iCloud account, posted on a publicly available child pornography website, and circulated around her college.[1] The circulation of this photograph caused her humiliation and severe depression.

The husband of another victim called the U.S. Attorney's Office and described to the undersigned Assistant U.S. Attorney and the victim-witness coordinator how they had been trying for years to figure out how the victim's nude photographs ended up posted on various websites on the internet. The pictures had been stored in the victim's iCloud account. The victim and her husband have been trying for years to get the websites to take down the photographs to no avail. Their efforts have been unsuccessful, costly, and time consuming, and the victim and her family have suffered much emotional distress.

---

[1] The victim impact statement has provided to the Probation Officer, who indicated she attached it to the PSR for the Court's review. PSR ¶ 22. The Government is providing a copy to defense counsel.

While there is no indication that Mr. Garofano personally posted the pictures of these two victims on publicly available websites, he did hack into their iCloud accounts. Whether he subsequently traded the victims' login credentials with others who then obtained and circulated the photographs, or whether he obtained the photographs himself and traded them with others who then posted them on the internet, he is just as responsible for the harm the victims suffered.

In considering whether a Guidelines sentence is appropriate, the Government notes that the Sentencing Guidelines only provides a two level enhancement for 10 or more victims. In this case, there were 240 victims, vastly exceeding the 10-victim threshold. The large number of victims in this case is not adequately reflected in the Guidelines calculation and further justifies a Guidelines sentence in this case. In addition, although the Government is not seeking an upward departure in this case, the Sentencing Guidelines provide that an upward departure would be warranted because Mr. Garofano's offense caused or risked non-monetary harm, including a substantial invasion of privacy and theft of personal information. *See* U.S.S.G. § 2B1.1, Application Note 20(A)(ii). An upward departure also would be warranted because his offense caused substantial harm to a victim's reputation, or the victim suffered a substantial inconvenience related to repairing a victim's reputation. *See id.*, Application Note 20(A)(vi)(I). As discussed above, some of the victims in this case had their private and intimate photos circulated on the internet, which undoubtedly would impact a victim's reputation. This is particularly true for the college student who provided the victim impact statement discussed above. The other victim mentioned above has described how she has been unable to remove her nude photographs from circulation. This harm provides further justification for a Guidelines sentence.

In considering the gravity of the offense and whether a Guidelines sentence is appropriate, the Government notes that Mr. Garofano also could have been charged with aggravated identity

theft under 18 U.S.C. § 1028A, which would have subjected him to a mandatory 2-year consecutive sentence.

In addition to the seriousness of the offense and its impact on the victims, the Court should consider the need for deterrence and the need to promote respect for the law. While it does not appear there is a great need of specific deterrence in this case, there is a need for general deterrence and promoting respect for the law. Cybercrime, identity theft, and computer hacking crimes are on the rise, and a message has to be sent to computer hackers who engage in this type of conduct that serious sentences will be imposed if this conduct occurs. A message has to be sent that hiding behind a computer does not insulate one from criminal liability. Breaking into and stealing from someone's online account is tantamount to breaking into and stealing from someone's home, and will be punished severely.

The Court also should consider the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. As noted in the PSR, three other defendants have been convicted and sentenced in other districts as a result of this FBI investigation.[2] PSR ¶¶ 4-6. Defendant Ryan Collins was sentenced to 18 months of imprisonment, followed by two years of supervised release. PSR ¶ 4. Defendant Edward Majerczyk was sentenced to 9 months of imprisonment, followed by three years of supervised release. PSR ¶ 5. Defendant Emilio Herrera was sentenced to 16 months of imprisonment, followed by three years of supervised release. PSR ¶ 6. As Mr. Garofano notes in his sentencing memorandum, defendants Majerczyk and Herrera were in Criminal History Category I, and

---

[2] A fourth defendant, Christopher Brannan, was charged in the Central District of California, but his case has not been resolved. PSR ¶ 7. Defendant Brannan was charged with both unauthorized access to a computer and aggravated identity theft. *Id.* The parties have signed a plea agreement in which the parties agree to jointly recommend a sentence of 34 months. *See United States v. Brannan*, Case 2:18-cr-00214-SJO (C.D.C.A), ECF No. 4 at 6 (plea agreement). The parties have also agreed to transfer the case, pursuant to Rule 20, to the Eastern District of Virginia for sentencing. PSR ¶ 7.

7

defendant Collins also appeared to be in Criminal History Category I, just like Mr. Garofano. *See* Def.'s Sentencing Mem. at 13.

In Mr. Garofano's sentencing memorandum, he requests a Guidelines sentence that includes a period of home detention in lieu of imprisonment. *See id.* at 4. He indicates he has accepted responsibility for his actions and has stayed out of trouble since he was caught. *See id.* at 5. He indicates that his family and friends describe him as selfless, hardworking, kind-hearted, and respectful. *Id.* at 6. Mr. Garofano has provides numerous letters of support describing what they believe is Mr. Garofano's selfless character and trustworthiness, and many of them explain his offense as a one-time mistake or error in judgment.

Mr. Garofano's support from his family and friends is commendable. However, their explanation of Mr. Garofano's offense as a one-time mistake or error in judgment is unavailing. Had he hacked into one or two people's accounts over a one-week period, that limited conduct could be characterized as a mistake or error in judgment. Here, Mr. Garofano engaged in 240 separate instances of hacking over the course of 18 months, possibly for financial gain. His actions can hardly be described as a one-time mistake or error in judgment.

Moreover, while Mr. Garofano may appear selfless to his friends and family, he certainly was not selfless towards his 240 victims. The word "selfless" is defined as "caring more for what other people need and want rather than for what you yourself need and want." Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/selfless. Here, Mr. Garofano acted just the opposite of someone who is selfless. He acted without regard for his victims, their privacy, and the impact his conduct would have on their lives. And he betrayed the trust of his school and fellow classmates by hacking into the accounts of many students at his college.

Finally, it bears noting that none of the other defendants in this investigation received home detention. Thus, in order to avoid sentencing disparities, the Government submits that a sentence that includes home detention is unwarranted.

In his sentencing memorandum, Mr. Garofano attempts to distance his case from the cases of defendants Majerczyk, Herrera, and Collins, who were each sentenced to terms of imprisonment with no home detention. *See* Def.'s Sentencing Mem. at 13-14. He argues that the sentences in those cases were based on the parties' joint recommendations to the court, which were agreed to in the plea agreement for each defendant. *See id.* at 14. However, those joint recommendations, were not binding on the court. *See United States v. Edward Majerczyk*, Case 1:16-cr-00550 (CPK) (N.D. Ill.), ECF No. 12 at 8 ("Majerczyk Plea Agreement"); *United States v. Emilio Herrera*, Case 1:17-cr-00725 (AJE) (N.D. Ill.), ECF No. 9 at 8 ("Herrera Plea Agreement"); *United States v. Ryan Collins*, 1:16-cr-00121 (WWC) (M.D.P.A.), ECF No. 5 at 19 ("Collins Plea Agreement"). While the court may have considered the recommendations in determining the appropriate sentence, the court was still mandated to impose sentence based on its own analysis of the various the 3553(a) factors.

Mr. Garofano further argues that defendants Majerczyk and Herrera had more victims than the 240 victims Mr. Garofano has in his case. While they may have had more victims, Mr. Garofano's conduct was still more severe than that of defendants Majerczyk, Herrera, and Collins. In those cases, there were no allegations, admissions, or factual stipulations that those defendants traded or sold the personal information or private photographs they obtained from their hacking activity. *Collins*, ECF No. 3 at 38-41 (factual stipulation); Majerczyk Plea Agreement at 2-4 (factual stipulation); Herrera Plea Agreement at 2-4 (factual stipulation); *see also Collins*, ECF No. 24 at 3 (defendant's sentencing memo noting that defendant did not distribute the photographs

9

he obtained); *Majerczyk*, ECF No. 18 at 3 (same); *Herrera*, ECF No. 14 at 1 (same). Mr. Garofano, on the other hand, admitted that he traded the information with others, and he further suggests he may have sold the information to others for money. Under these circumstances, Mr. Garofano is equally if not more culpable than those other three defendants.

Accordingly, the Government does not believe the facts and circumstances of Mr. Garofano's case warrant a period a home detention. Based on the various 3553(a) factors discussed above, the Government respectfully requests that the Court impose a Guidelines sentence of 10 to 16 months of imprisonment, followed by a period of supervised release that includes a special condition requiring Mr. Garofano to perform community service. *See* PSR ¶ 75 (suggesting 60 hours of community service as a special condition of supervised release).

### B. Restitution, Special Assessment, and Fine

The Court should impose the $100 mandatory special assessment that the defendant is required to pay pursuant to 18 U.S.C. § 3013. However, given Mr. Garofano's limited financial resources (*see* PSR ¶¶ 55-57), the Government is not seeking a fine. Instead, as discussed above, the Government recommends that Mr. Garofano be required to perform community service as part of his supervised release. *See* PSR ¶ 75; U.S.S.G. § 5E1.2(e) (indicating that community service is a preferable alternative when a defendant is unable to pay a fine). Finally, none of the victims has requested restitution.

## VI. CONCLUSION

For the reasons stated above, the Government respectfully asks the Court to impose Guidelines sentence of imprisonment of 10 to 16 months, followed by a period of supervised release that includes community service, and a $100 special assessment.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

*/s/ Neeraj N. Patel*

NEERAJ N. PATEL
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. phv04499
157 Church Street, 25th Floor
New Haven, CT 06510
Tel.: (203) 821-3700
Email: neeraj.patel@usdoj.gov

CERTIFICATE OF SERVICE

       I hereby certify that on August 22, 2018 a copy of the foregoing Sentencing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                        */s/ Neeraj N. Patel*
                                        Neeraj N. Patel
                                        Assistant United States Attorney